**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **PEDRO ORTIZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. ______________** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **RAZORBACK, INC.** | ) | |
| | ) | |
| Serve Registered Agent: | ) | |
| W. Matt Raper | ) | |
| 550 N 159th Street East, Suite 303 | ) | |
| Wichita, Kansas 67230 | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, Pedro Ortiz, by and through his undersigned counsel, and states and alleges as follows for his Complaint against Defendant Razorback, Inc.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

## NATURE OF THE CASE

1. This is an action for legal and equitable relief to address the deprivation of Plaintiff's civil rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") based on Plaintiff's sex, and Defendant's retaliatory conduct directed toward Plaintiff following his opposition to unlawful sex discrimination and sexual harassment.

2. Plaintiff seeks all available remedies from Defendant, including compensatory and punitive damages, costs, reasonable attorneys' fees, and equitable relief the Court deems warranted.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the matter involves questions of federal law.

4. Jurisdiction is proper over Defendant because it transacted business in the State of Kansas, and the discriminatory and wrongful acts alleged herein occurred in the State of Kansas.

5. Venue is proper in this Court as all or a substantial portion of the alleged acts, omissions and occurrences giving rise to the claims asserted occurred in Wichita, Kansas, at Defendant's business location, McDonald's restaurant, situated at 8100 E. 21st Ct. N., Wichita, Kansas, 67226.

## PARTIES

6. Plaintiff, Pedro Ortiz ("**Plaintiff**") is and was at all times relevant to the allegations contained herein, a Kansas resident and citizen.

7. Defendant Razorback, Inc. ("**Defendant**") is and was at all times relevant herein, a Kansas for-profit corporation organized in, and conducting business in, the State of Kansas, including at the McDonald's restaurant located at 8100 E. 21st Ct. N., Wichita, Kansas, 67226, where Plaintiff worked.

8. At all times relevant to the allegations herein, Defendant was Plaintiff's employer.

9. Defendant has employed more than 15 employees at all times relevant to the allegations herein, and is an "employer" as defined in Title VII, 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEDURES

10. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 18, 2019, which generated the charge filing number 563-2020-00468. A true and accurate file-stamped copy of the Charge is attached

hereto as **Exhibit A** and incorporated by reference.

11. Plaintiff thereafter received a Notice of Right to Sue from the EEOC dated August 21, 2020. A true and correct copy of the Notice is attached hereto as **Exhibit B** and is incorporated herein by reference.

12. This action is timely filed with the Court and Plaintiff has met all conditions precedent to the filing of this action.

## FACTUAL ALLEGATIONS

13. Plaintiff first worked at the McDonald's located at 8100 E. 21st Ct. N., Wichita, Kansas, 67226, from approximately June 2017 through February 2018.

14. In approximately June 2019, Plaintiff returned to once again work at this location, which was owned by Defendant Razorback, Inc. Defendant also owned other McDonald's restaurants in the Wichita area.

15. At all times relevant to the allegations in this Complaint, Ms. Kalynda Howard was the General Manager of this McDonald's location.

16. Mr. Matt Raper is the registered agent of Razorback, Inc., and his son, Josh Raper, helped to manage one or more of the McDonald's restaurants that Defendant owned.

17. Since Plaintiff returned to work at the restaurant in June 2019, he has been subjected to sexual harassment and a hostile work environment based on sex, on a regular and continuous basis.

18. Two of Plaintiff's female managers, Claudia and Sasha, frequently suggested he should pursue and "cojer" (a profanity in Spanish, which translates to "f-ck") the General Manager, Kalynda Howard, who was in the midst of a divorce.

19. Managers Claudia and Sasha would also regularly ask Plaintiff if he liked Ms.

Howard, and would hint that they thought she liked him.

20. When Plaintiff responded that he would not pursue Ms. Howard because he had a girlfriend in Mexico, they asked him if he was a "joto," which is a slur for "homosexual" in Spanish.

21. Managers Claudia and Sasha would also frequently call or text Plaintiff on his cell phone throughout the day, including late at night, to ask if Plaintiff wanted to go somewhere, or whether he would "f-ck" Ms. Howard or any other work colleagues.

22. Plaintiff would remind them that he was not interested in Ms. Howard, and that he had a girlfriend. They would claim his girlfriend would "not find out."

23. On one occasion, Plaintiff was working on his maintenance duties when Manager Claudia asked him to help out in the kitchen while the restaurant was short-staffed.

24. After Plaintiff finished providing assistance in the kitchen, he returned to his maintenance duties.

25. Manager Claudia then became upset because Plaintiff did not empty the trash bags in the kitchen and told Plaintiff that he was "haciendome pendejo" (*i.e.*, "playing dumb," in Spanish).

26. When Plaintiff responded that he had been trying his best to help, Manager Claudia told him, "vete a la verga," which means "f-ck off" in Spanish.

27. Manager Sasha also commented several times in the presence of Plaintiff's coworkers that because of the jeans he wears, he must be "gay" and his "penis must be really small."

28. Such remarks made Plaintiff's coworkers laugh at him and caused him great embarrassment. Coworkers would also suggest that he should pull his pants down to prove Sasha wrong which was humiliating to Plaintiff.

29. One time, a customer walked in, and Manager Sasha remarked that the customer "looked gay." She then suggested that Plaintiff should walk by him to see if he would notice Plaintiff. She further suggested that if he did notice Plaintiff, then Plaintiff must also be "gay."

30. Manager Sasha also referred to Plaintiff as "Pedra," the feminine version of his name, in Spanish.

31. Manager Sasha also told Plaintiff he had "man boobs."

32. General Manager Ms. Howard would hear some of the sexually harassing comments directed toward Plaintiff, but would simply ignore them and fail to take meaningful action to stop and address the sexual harassment occurring in the workplace.

33. In addition to the verbal harassment already described, Manager Claudia would also touch Plaintiff regularly in an unwelcome manner when she would ask Plaintiff for favors, such as retrieving items from the freezer.

34. When Plaintiff backed away to prevent Claudia from touching him, she said, "no te hagas pendejo," which means "don't play stupid" in Spanish.

35. Once, when Plaintiff was retrieving an item from the freezer for Manager Claudia, she followed him and tried to get inside the freezer with him. When Plaintiff stepped out of the freezer before Claudia could get in, she said, "I was about to get in with you."

36. This interaction made Plaintiff feel uncomfortable because he understood her action and statement to have sexual connotations.

37. Thereafter, other female crew members who witnessed the interaction began repeating Manager Claudia's words in a suggestive manner, further embarrassing and offending Plaintiff.

38. Because Plaintiff's managers were subjecting him to sexual harassment, and the General Manager would witness the harassing behavior but failed to take action to stop and address the harassment, Plaintiff felt that he could not rely on management to stop the harassment.

39. Additionally, Plaintiff felt the need to keep his job to help support his brother who suffers from cerebral palsy, and feared that reporting the harassment might cause Defendant to terminate his employment or otherwise engage in acts of retaliation against him.

40. On or about August 17, 2019, Plaintiff could no longer tolerate the ongoing sexual harassment, and made a formal complaint to General Manager Ms. Howard about the harassment and hostile work environment he had experienced since the start of his employment in June 2019.

41. Ms. Howard claimed that no one would find out about Plaintiff's complaint, except two other managers, Josh Raper and Dee [last name currently unknown].

42. Ms. Howard suggested that, subject to an approval from Josh Raper, Plaintiff could be transferred to a different McDonald's location.

43. Later, Josh Raper offered Plaintiff a pay raise of $1.50 an hour, which consisted of $1.25 an hour for performing maintenance duties, and an additional $0.25 an hour in exchange for his transfer to a different McDonald's restaurant location.

44. After some hesitation, Plaintiff agreed to the transfer. Soon thereafter, Plaintiff was transferred to work at the McDonald's restaurant located at 3527 N. Rock Road, Wichita, Kansas 67226.

45. Unfortunately, following Plaintiff's complaints of the sexual harassment and hostile work environment he had experienced, Defendant subjected him to retaliation.

46. For example, Defendant transferred Plaintiff to a new work location following his complaints of sexual harassment while none of the managers or crew members who participated in the sexual harassment were required to relocate.

47. Additionally, although Defendant promised Plaintiff a pay raise for relocating, as of September 28, 2019, the raise had not been reflected in any of Plaintiff's paychecks.

48. Plaintiff eventually received a pay raise of $0.15 per hour, beginning on October 13, 2019, but this raise was much smaller than the $1.50 per pay raise Defendant had promised to him.

49. Furthermore, Plaintiff's work hours were reduced from the 21 hours per week that he was previously scheduled to work, to 16.5 hours per week at the new location to which he was transferred.

50. As a result of the sexual harassment and hostile work environment based on sex, as well as the subsequent retaliation Plaintiff suffered after his complaints of harassment, Plaintiff has suffered and will continue to suffer damages in the form of emotional distress (including but not limited to embarrassment, humiliation, harm to reputation, mental anguish, and upset) and lost wages, and in other ways.

51. At all times relevant herein, before and after, the individuals responsible for the acts alleged herein were agents, servants and employees of Defendant and were at all times acting within the scope and course of their agency and employment, or their actions were expressly authorized or ratified by Defendant. Therefore, Defendant is vicariously liable for the individuals' actions.

**COUNT I**
**Title VII Sex Discrimination & Sexual Harassment**
**(42 U.S.C. § 2000e *et seq.*)**

52. Plaintiff incorporates by reference the allegations contained in every other paragraph as though fully set forth herein.

53. During the course and scope of Plaintiff's employment, Defendant's representatives, including but not limited to Managers Claudia and Sasha, while acting within the course and scope of their employment, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his male sex, in violation of Title VII.

54. The harassment and discrimination to which Defendant subjected Plaintiff was sufficiently severe and pervasive that it had the purpose and effect of unreasonably interfering with the terms, conditions, and privileges of Plaintiff's employment, and created an intimidating, hostile and offensive working environment for Plaintiff.

55. The conduct described herein would have offended a reasonable person of the same sex in Plaintiff's position.

56. Management-level employees of Defendant, including but not limited to General Manager Kalynda Howard and Managers Claudia and Sasha, knew or should have known of the sex discrimination and harassment described herein, and failed to implement effective and appropriate procedures to stop and remedy the sex discrimination and harassment.

57. Plaintiff's sex was a motivating or determining factors in the decision of Defendant's management-level employees to engage in sexually harassing behavior toward Plaintiff.

58. The sexually harassing and hostile work environment to which Defendant subjected Plaintiff directly and proximately caused, and will continue to cause, Plaintiff to suffer damages, in the form of emotional distress (including but not limited to embarrassment, humiliation, harm to reputation, mental anguish, and upset) and lost wages, and in other ways.

59. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

60. At all times referenced herein, the above-referenced perpetrators were agents, servants and employees of Defendant, and were at all times acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count I of her Complaint, for a finding that he has been subjected to unlawful discrimination as prohibited by 42 U.S.C. 2000 *et seq*., for an award of compensatory and punitive damages, pre-judgment and post-judgment interest, as provided by law, for his costs expended, for reasonable attorneys' fees and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT II
**Title VII – Retaliation**
**42 U.S.C. § 2000e et seq.**

COMES NOW Plaintiff, and for Count II of his Complaint against Defendant, alleges and states as follows:

61. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

62. Plaintiff complained to Defendant of the sex discrimination and sexual harassment to which Defendant subjected Plaintiff, as set forth herein.

63. Plaintiff's complaints of sex discrimination and sexual harassment constituted a legally protected activity under Title VII.

64. By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff, in ways including but not limited to requiring Plaintiff to transfer to a new location while Defendant's representatives who harassed him were not required to transfer or relocate; issuing Plaintiff a much smaller pray raise than Defendant initially promised to him; and reducing Plaintiff's work hours.

65. At all times mentioned herein, before and after, the above-mentioned individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

66. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

67. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

68. The actions and conduct set forth herein was outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

69. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages, in the form of emotional distress (including but not limited to embarrassment, humiliation, harm to reputation, mental anguish, and upset) and lost wages, among other ways.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful retaliation prohibited by 42 U.S.C. §2000e *et seq.*; for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees and expert fees provided by 42 U.S.C. § 2000e 5k, and for such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all Counts alleged herein.

Respectfully Submitted,

**HOLMAN SCHIAVONE, LLC**

By: /s/ *Kathleen E. Mannion*
Anne W. Schiavone, KS Bar #19669
Kathleen E. Mannion, KS Bar #25362
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
Email: aschiavone@hslawllc.com
Email: kmannion@hslawllc.com
**ATTORNEYS FOR PLAINTIFF**